Paul C. Wilson, Judge
A-1 Premium Acceptance, Inc., d/b/a King of Kash, ("A-1") appeals the circuit court's order denying A-1's application to compel arbitration and to stay proceedings on the claims brought by borrower Meeka Hunter ("Hunter"). See § 435.440, RSMo 2016 (permitting an appeal of an order denying an application to compel arbitration).[1] Because the plain language of the parties' arbitration agreement shows they agreed to arbitrate before - but only before - the National Arbitration Forum ("NAF"), this Court affirms the circuit court's order.
Background
In June and July 2006, Hunter applied for four loans from A-1 totaling $800. Hunter's loans were approved, and A-1 and Hunter executed contracts regarding those loans. Each of the contracts contained the same arbitration agreement (the "Agreement"), which states:
You [the borrower] agree and understand that a claim or demand for recovery of the balance due lender resulting from your default in payment may be asserted by lender in any court of competent jurisdiction. However, you agree that any claim or dispute including class action suits, other than that resulting from your default in payment, between you and the lender or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the rela *925 tionship or duties contemplated under this contract, including the validity of this arbitration clause, shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure then in effect . Any award of the arbitrator(s) may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed at any office of the National Arbitration Forum or at P.O. Box 50191, Minneapolis, MN 55405 . This agreement shall be interpreted under the Federal Arbitration Act.
[Emphasis added.]
In July 2009, the Minnesota Attorney General sued NAF, alleging consumer fraud, deceptive trade practices, and false advertising. The complaint alleged NAF worked with creditors behind the scenes to ensure positive outcomes for creditors in intentionally and consistently one-sided arbitrations. Three days after suit was filed, NAF entered into a consent decree requiring it immediately to stop providing arbitration services for consumer claims nationwide, including claims such as Hunter's for which A-1 seeks to compel arbitration. See CompuCredit Corp. v. Greenwood, 565 U.S. 95, 112 n.2, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012) (Ginsburg, J., dissenting); In re Nat'l Arbitration Forum Trade Practices Litig. , 704 F.Supp.2d 832, 835-36 (D. Minn. 2010).
In 2015, Hunter defaulted on the loans, and A-1 filed suit in Jackson County Circuit Court seeking to recover the remaining principal of $275, interest in the amount of $6,957.62, and attorney fees plus costs. In her answer, Hunter asserted a counterclaim alleging a violation of the Missouri Merchandising Practices Act and, in an amended answer, Hunter requested certification of a class of all similarly situated borrowers. A-1 filed an application to compel arbitration on Hunter's counterclaim pursuant to the Agreement. Acknowledging NAF could not play the role the parties envisioned for it in the Agreement, A-1 argued the circuit court must designate a new arbitrator under section 5 of the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 5 (2012). The circuit court denied A-1's application, and A-1 appeals. This Court granted transfer and has jurisdiction pursuant to article V, section 10, of the Missouri Constitution.
Analysis
A-1's appeal presents only one preserved and distinct claim,[2] i.e., whether the circuit court erred in refusing to compel arbitration of Hunter's claim against A-1 because the claim is covered by the Agreement and the unavailability of NAF
*926 must be remedied by the appointment of a substitute arbitrator under section 5 of the FAA. This "is a question of law decided de novo. " Ellis v. JF Enters., LLC , 482 S.W.3d 417, 419 (Mo. banc 2016).
According to the express terms of the Agreement, the FAA controls its interpretation and implementation. Section 5 of the FAA, on which A-1 relies, provides in its entirety:
If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.
9 U.S.C. § 5 (2012) (emphasis added).[3]
The FAA "reflects the overarching principle that arbitration is a matter of contract." Am. Express Co. v. Italian Colors Rest. , 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013). "And consistent with that text, courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." Id. (quotations, emphasis, and alterations removed). Accordingly, for purposes of analyzing the issue presented in this case, there are two types of arbitration agreements: (1) agreements in which the parties agree to arbitrate regardless of the availability of a named arbitrator, and (2) agreements in which the parties agree to arbitrate before - but only before - a specified arbitrator. If the former, section 5 of the FAA authorizes and requires courts to name a substitute arbitrator when the agreement fails to identify one or fails to provide a means for naming a substitute. If the agreement is of the latter type, however, nothing in the FAA authorizes (let alone requires) a court to compel a party to arbitrate beyond the limits of the agreement it made. Employing this analysis, the Court holds A-1 and Hunter agreed to arbitrate before - but only before - NAF and, as a result, the circuit court did not err in refusing to compel Hunter to arbitrate before some other arbitrator under the auspices of section 5 of the FAA.
*927 Because NAF aggressively marketed its services to lenders such as A-1 (and other entities routinely entering into contracts of adhesion with consumers in which arbitration agreements might easily be inserted), it comes as no surprise NAF's sudden and unforeseen departure from the consumer arbitration landscape has spawned a great deal of litigation over whether and how to enforce arbitration agreements identifying NAF as the arbitrator. And, because the language of the various arbitration agreements differ widely and materially, it comes as no surprise that the results in these cases are less than uniform.[4]
In some of these cases, the courts have focused not on whether the parties have agreed to arbitrate before anyone other than NAF but on whether the reference to NAF was an "integral part of the agreement *928 to arbitrate" or an "ancillary logistical concern." See Brown v. ITT Consumer Fin. Corp. , 211 F.3d 1217, 1222 (11th Cir. 2000) (quotation omitted); see also Daniel A. Sito, Comment, "Integral " Decisionmaking: Judicial Interpretation of Predispute Arbitration Agreements Naming the National Arbitration Forum , 81 U. Chi. L. Rev. 1991, 2003-15 (2014) (noting widespread adoption of the integral/ancillary test, but lack of consensus in its application). It may be these are simply two descriptions of the same analysis. Or it may be the integral/ancillary analysis would allow for a court to name a substitute arbitrator even though the parties had agreed to arbitrate before - but only before - the named arbitrator provided the agreement was not "integral" to the arbitration agreement as a whole. The latter prospect is troubling, but this Court need not definitely resolve the matter here because it is clear in the present case both that A-1 and Hunter intended to arbitrate before - but only before - NAF and that this exclusivity was sufficiently integral to the parties' arrangement that A-1 drafted the Agreement to ensure compliance with it.
Courts "ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." Ethridge v. TierOne Bank , 226 S.W.3d 127, 131 (Mo. banc 2007). "If the contract terms are unequivocal, plain, and clear, the court is bound to enforce the contract as written." Malan Realty Inv'rs, Inc. v. Harris , 953 S.W.2d 624, 626-27 (Mo. banc 1997).
Here, the plain and unambiguous language of the Agreement shows Hunter and A-1 agreed to arbitrate before - but only before - NAF.[5] The Agreement provides Hunter's claims "shall be resolved by binding arbitration by the National Arbitration Forum , under the Code of Procedure then in effect." [Emphasis added.] The unequivocal, plain and clear terms of this Agreement establish that A-1 and Hunter agreed only to arbitrate before NAF. A-1 drafted this provision and it freely chose to require such an agreement from Hunter (and other borrowers) as a condition of obtaining loans from A-1. Having made the choice to insist upon NAF - and only NAF - as the arbitration forum, A-1 cannot now look to section 5 of the FAA to expand the arbitration promise it extracted from Hunter in the Agreement.[6]
*929 Other considerations support this conclusion. As noted above, the Agreement provides Hunter's claims "shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure then in effect ." [Emphasis added.] The 2006 NAF Code of Procedure, submitted as evidence by A-1, provides that only NAF may administer the Code. In other words, the parties agreed to arbitrate pursuant to NAF's Code and, according to NAF, only NAF can apply and administer that Code. This precludes any inference that the parties - despite having named NAF as the only arbitrator before which they would proceed - intended to arbitrate before some other arbitrator in the event NAF was unavailable. Similarly, the requirement in the Agreement that arbitration claims must be filed at NAF's home office in Minnesota or in one of its branches precludes the inference the parties' Agreement extended to arbitrations before any arbitrator other than NAF. Taken as a whole, therefore, the plain language of the Agreement shows Hunter and A-1 agreed to arbitrate before NAF and no other arbitrator.
To be clear, merely identifying an arbitrator in an arbitration agreement - without more - cannot justify refusing to name a substitute under section 5 of the FAA on the ground the parties' agreement was limited to arbitrating before - but only before - the identified arbitrator. Instead, there must be a basis to conclude the parties' arbitration agreement was limited to the specified arbitrator. Here, the plain language of the Agreement provides that basis.
Conclusion
For the reasons set forth above, the circuit court's denial of A-1's application to compel arbitration and to stay the proceedings is affirmed.
Draper, Russell, Powell, Breckenridge and Stith, JJ., and Page, Sp.J., concur.
Fischer, C.J., not participating.

Unless otherwise noted, all statutory references are to RSMo 2016.

A-1 initially attempted to raise this same claim in a separate point relied on by couching NAF's unavailability in terms of a "latent ambiguity." In its reply brief, however, A-1 conceded this claim is indistinguishable from its first. A-1 also attempted to raise a claim the circuit court erred by failing to appoint an arbitrator under section 435.360, a provision of the Missouri Uniform Arbitration Act ("MUAA"), to fill the role envisioned for NAF in the parties' Agreement. This point is not preserved, however, because it was not "presented to or decided by the trial court." State ex rel. Nixon v. Am. Tobacco Co. , Inc., 34 S.W.3d 122, 129 (Mo. banc 2000). A-1 referenced the MUAA only once in its filings before the circuit court. That reference came in the form of a footnote, which was appended to a sentence arguing the FAA governed the parties' arbitration agreement and required arbitration. This note reads: "Even if the [MUAA] were to be applied, the results would be the same - arbitration is required in this case." This is insufficient to put the circuit court on notice A-1 was asserting section 435.360 as a separate and independent basis for its application to compel arbitration. As a result, this solitary reference was insufficient to preserve the claim for appellate review.

Section 5 is a default provision. See Hall St. Assocs., L.L.C. v. Mattel, Inc. , 552 U.S. 576, 587, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (describing section 5 as "an example of ... a default provision"); Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co. , 609 F.3d 122, 127-28 (2d Cir. 2010) (same); Eaton v. CMH Homes, Inc. , 461 S.W.3d 426, 437 n.8 (Mo. banc 2015) (same). This means section 5 requires a court to appoint a substitute arbitrator unless it appears the parties did not intend to arbitrate before a substitute arbitrator in the event their chosen arbitrator became unavailable. See, e.g. , Wal-Mart Stores, Inc. Assocs'.Health & Welfare Plan v. Wells , 213 F.3d 398, 402 (7th Cir. 2000) (Posner, J.) (noting "default rules ... govern in the absence of a clear expression of the parties' [contrary] intent") (cited with approval in US Airways, Inc. v. McCutchen , 569 U.S. 88, 102, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013) ); Randy E. Barnett, The Sound of Silence: Default Rules and Contractual Consent , 78 Va. L. Rev. 821, 825 (1992) (noting default rules govern "in the absence of manifested assent to the contrary").

Some cases grant applications to compel arbitration. See, e.g., Green v. U.S. Cash Advance Ill., LLC , 724 F.3d 787, 788, 792-93 (7th Cir. 2013) (compelling arbitration and reasoning the parties selected private dispute resolution when the contract language stated disputes "shall be resolved by binding arbitration by one arbitrator by and under the [NAF Code of Procedure]"); Khan v. Dell Inc. , 669 F.3d 350, 355 (3d Cir. 2012) (finding the clause "shall be resolved exclusively and finally by binding arbitration administered by [NAF]" ambiguous because "exclusively" could modify both "binding arbitration" or "[NAF]," and resolving that ambiguity in favor of arbitration) (emphasis removed); Adler v. Dell Inc. , 2009 WL 4580739 at *1-2, 5 (E.D. Mich. Dec. 3, 2009) (compelling arbitration when agreement said in bold "any claim, dispute, or controversy ... shall be resolved exclusively and finally by binding arbitration administered by [NAF] under its Code of Procedure then in effect" and noting the "shall be resolved" clause could refer either to intent to arbitrate all disputes or to have NAF be the exclusive arbitrator) (emphasis removed); Courtyard Gardens Health & Rehab., LLC v. Arnold , 2016 Ark. 62, 485 S.W.3d 669, 674-79 (holding trial court erred in denying motion to compel arbitration based on impossibility and finding reference to NAF could be severed when agreement referenced the NAF Code of Procedure in the main body of the text but referenced the NAF itself in a footnote; choice of NAF was ancillary logistical concern); Wright v. GGNSC Holdings LLC , 808 N.W.2d 114, 115-16, 122-23 (S.D. 2011) (finding choice to arbitrate predominated and choice of NAF was ancillary logistical concern when the agreement language stated in bold, "The parties understand and agree that this contract contains a binding arbitration provision which may be enforced by the parties, and that by entering into this arbitration agreement, the parties are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury, as well as any appeal from a decision or award of damages") (emphasis removed).
Other cases deny applications to compel arbitration. See, e.g., Moss v. First Premier Bank , 835 F.3d 260, 262-63, 265-67 (2d Cir. 2016) (finding when agreement stated claims "shall be resolved by binding ... arbitration by and under [NAF Code of Procedure]," NAF was exclusive arbitrator; therefore, there was no "lapse" and, instead, the parties contemplated arbitrating only before NAF); Flagg v. First Premier Bank , 644 F. App'x 893, 896-97 (11th Cir. 2016) (per curiam) (finding use of the word "shall" and reference to NAF's Code indicated the parties contemplated arbitrating only before NAF; choice of NAF was integral); Ranzy v. Tijerina , 393 F. App'x 174, 175-76 (5th Cir. 2010) (per curiam) (finding use of the word "shall" indicated "the parties explicitly agreed that the NAF shall be the exclusive forum"); Carideo v. Dell, Inc. , 2009 WL 3485933, at *4-6 (W.D. Wash. Oct. 26, 2009) (finding the selection of NAF integral to arbitration agreement and declining to name a substitute arbitrator when agreement stated disputes "shall be resolved exclusively and finally by binding arbitration administered by [NAF] under its Code of Procedure then in effect") (emphasis removed); Rivera v. Am. Gen. Fin. Servs. , 150 N.M. 398, 259 P.3d 803, 814-15 (2011) (finding that when agreement stated "[a]rbitration will be conducted under the rules and procedures of the [NAF] or successor organization that are in effect at the time arbitration is started and under the rules set forth in the Arbitration Provisions," the choice of NAF was integral to the agreement and parties could not be compelled to arbitrate before a substitute) (alterations in original).

Several cases compelling arbitration notwithstanding NAF's unavailability turned on the fact the arbitration agreement named NAF and others (often the American Arbitration Association) as potential arbitrators. See, e.g., Robinson v. EOR-ARK, LLC , 841 F.3d 781, 783-84 (8th Cir. 2016) (affirming decision to compel arbitration when agreement listed five possible fora for arbitration); Smith v. ComputerTraining.com, Inc. , 531 F. App'x 713, 715-16 (6th Cir. 2013) (enforcing arbitration agreement when it listed both NAF and AAA as potential arbitrators); Mason v. Midland Funding LLC , 2018 WL 3702462, at *36-37 (N.D. Ga. May 25, 2018) (enforcing an arbitration provision naming both NAF and AAA as potential arbitrators because choice of a particular arbitrator was not central to the agreement); Credit Acceptance Corp. v. Front , 231 W.Va. 518, 745 S.E.2d 556, 559, 570 (2013) (compelling arbitration and finding the choice of arbitrator ancillary when the agreement listed both the NAF and AAA as potential arbitrators). Here, however, the absence of such alternatives supports the conclusion that the parties intended to arbitrate before - but only before - NAF.

Arbitration agreements that foresee and account for the possible unavailability of an identified arbitrator can easily be imagined and, in fact, are not rare. See, e.g., In re Gateway LX6810 Comput. Prods. Litig. , 2011 WL 3099862, at *1-2, 4 (C.D. Cal. July 21, 2011) (enforcing arbitration agreement notwithstanding NAF's unavailability when the agreement stated: "You and Gateway will agree on another arbitration forum if NAF ceases operations").