IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
CAR CREDIT, INC., )
 )
 Respondent, )
 )
v. ) WD84054
 )
CATHY L. PITTS, ) Opinion filed: August 24, 2021
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE JENNIFER M. PHILLIPS, JUDGE

 Division Three: Edward R. Ardini, Jr., Presiding Judge,
 Mark D. Pfeiffer, Judge and W. Douglas Thomson, Judge

 Cathy Pitts (“Pitts”) appeals the judgment of the Circuit Court of Jackson County

confirming an arbitration award finding in favor of Respondent Car Credit, Inc. (“Car Credit”).

This action arises from Pitts’s 2011 automobile purchase and related financing from Car Credit.

As part of that transaction, Pitts signed an arbitration agreement in which she and Car Credit agreed

to arbitrate disputes before the National Arbitration Forum (“NAF”). Car Credit subsequently

repossessed the vehicle due to Pitts’s failure to remain current with the terms of the financing

agreement and initiated a breach of contract action in the trial court. Pitts counterclaimed alleging

Car Credit engaged in unlawful practices relating to vehicle repossession and collection of alleged

deficiencies and sought class certification. Car Credit voluntarily dismissed its claim and moved

to compel arbitration of Pitts’s counterclaim. The trial court granted the motion and ordered Pitts’s
counterclaim be arbitrated before the American Arbitration Association (“AAA”), as NAF was

unavailable.

 We reverse the judgment of the trial court confirming the award entered by the AAA

arbitrator. Because the parties agreed to arbitrate before—but only before—NAF, the AAA

arbitrator was without authority to arbitrate Pitts’s claims.

 Factual and Procedural Background

 In July 2011, Pitts entered into a Retail Installment Contract and Security Agreement with

Car Credit for the purchase and financing of an automobile. As part of that transaction, Pitts

executed an arbitration agreement, which provided that:

 You and we [Car Credit] agree that if any Dispute arises, either you or we may
 choose to have the Dispute resolved by binding arbitration under the rules then in
 effect of the Arbitration Organization shown below (if no Arbitration Organization
 is shown below, the Arbitration Organization shall be the National Arbitration
 Forum). If such rules conflict with this Arbitration Agreement, the terms of this
 Arbitration Agreement shall apply.

At the bottom of the one-page arbitration agreement was a blank line, under which the following

was typed:

 Arbitration Organization (If none listed, the Arbitration Organization is the
 National Arbitration Forum) See reverse side for addresses and phone numbers of
 arbitration organizations.[1]

No arbitration organization was identified on that line.

 As relevant here, the term “Dispute” was defined in the agreement as “any controversy or

claim . . . arising from or relating to the vehicle lease, loan or financing agreement (the

‘Obligation’) you have entered into with us on the date shown above,” and included “any question

regarding whether a matter is subject to arbitration under this Arbitration Agreement.”

1
 The reverse side of the arbitration agreement is not included in the legal file, and the record and parties’ briefing
indicate that it was never presented to the trial court or arbitrator. In its brief, Car Credit concedes that “the back of
the Agreement could not be located[.]”

 2
 The parties agreed that “this Arbitration Agreement shall be subject to and governed by the

Federal Arbitration Act, 9 U.S.C. Sections 1-16, as amended.”

 In 2015, Car Credit sent Pitts a Notice of Repossession and Plan to Sell Property, advising

that her vehicle had been repossessed due to her failure to make payments, Car Credit intended to

sell the vehicle after a lapse of ten days, and she could “get the collateral back” by paying Car

Credit “the full amount [she] owe[d] (not just past due payments) including [Car Credit’s]

expenses.” One month later, Car Credit sent Pitts a Notice of Deficiency Balance Due, stating that

Pitts’s vehicle had been sold for $800 and she owed Car Credit a “Net Deficiency Balance” of

$4,896.03.

 In November 2015, Car Credit initiated this action by filing a Petition for Breach of

Contract Damages against Pitts. Pitts filed an answer and counterclaim. In her First Amended

Counterclaim, Pitts asserted a “consumer class action . . . seeking relief to redress an unlawful and

deceptive pattern of wrongdoing followed by Car Credit regarding collection, enforcement,

repossession and disposition of collateral, and collection of alleged deficiencies.” In May 2016,

Car Credit filed a Notice of Dismissal, voluntarily dismissing its petition against Pitts without

prejudice and leaving Pitts’s counterclaim as the only pending claim in this action.

 In June 2016, Car Credit filed a Motion to Compel Arbitration and Stay Trial Court

Proceedings. Among other arguments raised in opposition, Pitts asserted that “[t]he forum

designated by the arbitration agreement—the National Arbitration Forum (NAF)—is no longer

available” and that “[a]rbitration should not be compelled due to [its] unavailability[.]”2 The trial

court denied the motion to compel without stating its basis for the ruling.

2
 “In July 2009, the Minnesota Attorney General sued NAF, alleging consumer fraud, deceptive trade practices, and
false advertising.” A-1 Premium Acceptance, Inc. v. Hunter, 557 S.W.3d 923, 925 (Mo. banc 2018). “The complaint
alleged NAF worked with creditors behind the scenes to ensure positive outcomes for creditors in intentionally and

 3
 In May 2017, Pitts filed a Motion for Class Certification, seeking to certify a class of Car

Credit consumers and a Missouri subclass of such individuals. In December 2017, the trial court

granted the motion and certified the class and Missouri subclass.

 In April 2018, prior to the mailing of any class notice, Car Credit filed a Renewed Motion

to Compel Arbitration, based on “[t]wo very recent cases since [the trial court’s] prior ruling.” 3

Car Credit argued that, pursuant to these recent decisions, “the language in the Pitts arbitration

agreement unambiguously delegates to the arbitrator all the gateway issues of formation,

interpretation, scope or validity of the arbitration agreement, and whether an issue is arbitrable[.]”

In response, Pitts argued that “no arbitrator is available to decide issues delegated to the NAF and

[Car Credit’s] renewed motion must be denied.” Pitts also advised that the Missouri Supreme Court

had recently granted transfer in a case involving an arbitration agreement designating NAF as the

arbitrator—A-1 Premium Acceptance v. Hunter—and that argument was set to be heard in that

case within a few days.4

 On June 26, 2018, the trial court granted Car Credit’s renewed motion. The trial court

acknowledged that Hunter had been transferred to the Missouri Supreme Court, but found the

reasoning of this Court’s earlier Hunter opinion persuasive. The trial court ordered Pitts, “if she

wishe[d] to proceed further on her claims, [to] . . . file a claim, as an individual claimant, in

consistently one-sided arbitrations.” Id. “Three days after suit was filed, NAF entered into a consent decree requiring
it immediately to stop providing arbitration services for consumer claims nationwide[.]” Id.
3
 The cases were Ford Motor Credit Company, LLC v. Jones, 549 S.W.3d 14 (Mo. App. W.D. 2018) and State ex rel.
Pinkerton v. Fahnestock, 531 S.W.3d 36 (Mo. banc 2017). Neither of these cases involved NAF or an unavailable
arbitrator.
4
 Prior to the Missouri Supreme Court accepting transfer, this Court held that the arbitration agreement was enforceable
notwithstanding its designation of NAF as the arbitrator. See A-1 Premium Acceptance v. Hunter, WD79735, 2017
WL 3026917, at * 5 (Mo. App. W.D. July 18, 2017) (Witt, J., dissenting).

 4
arbitration before the American Arbitration Association (AAA), pursuant to its consumer

arbitration rules for arbitration[.]”

 In October 2018, the Missouri Supreme Court handed down its decision in A-1 Premium

Acceptance v. Hunter, holding that because the parties agreed to arbitrate before—but only

before—NAF, the trial court could not order arbitration before a different organization,

notwithstanding NAF’s unavailability. 557 S.W.3d 923, 929 (Mo. banc 2018).

 In January 2019, the AAA arbitrator entered an order concluding that he had authority to

arbitrate Pitts’s claim, specifically finding that the arbitration agreement was valid and

enforceable, the class claims were not subject to arbitration,5 Car Credit had not waived its right

to invoke arbitration, Pitts’s claim was included within the term “Dispute” in the arbitration

agreement, and that AAA could be substituted for NAF as the arbitration organization.

 In April 2019, Pitts filed with the trial court a Motion to Reconsider Order Granting

Renewed Motion to Compel Arbitration and a Motion to Vacate Order of Arbitrator Regarding

Jurisdiction, citing the Hunter decision. The trial court denied the motions. Thereafter, Pitts sought

writs of mandamus in this Court and the Missouri Supreme Court, which were denied.

 In January 2020, the AAA arbitrator entered an award on the merits of Pitts’s claims,

finding in favor of Car Credit. Thereafter, Pitts filed in the trial court a Renewed Motion to

Reconsider Order Compelling Arbitration and a Motion to Vacate the Arbitration Award, and Car

Credit filed a Motion for Confirmation of Arbitration Award, Entry of Judgment Consistent with

the Arbitration Award, and to Lift of [sic] the Stay to Decertify the Class. In June 2020, the trial

court denied Pitts’s motions and entered an order confirming the arbitration award and decertifying

the class. In September 2020, the trial court entered its judgment confirming the arbitration award

5
 The arbitration agreement provided that “[n]o class action arbitration may be ordered under this provision[.]”

 5
and finding in favor of Car Credit and against Pitts “on all issues, claims, counterclaims, and/or

causes of action in accordance with the January 21, 2020, arbitration award.” This appeal followed.

 Pitts asserts on appeal—in three points relied on—that the trial court erred in entering the

judgment confirming the AAA arbitrator’s award. Although the arguments raised in her points

overlap, the grounds for each point are essentially: (1) the trial court erroneously granted Car

Credit’s renewed motion to compel arbitration in that “if issues of arbitrability could be delegated

to any arbitration forum, the National Arbitration [Forum] was the exclusive forum”; (2) the trial

court erroneously denied Pitts’s motion to reconsider in that Hunter “vindicated Pitts’s opposition

to the renewed motion”; and (3) the arbitrator exceeded his authority “in that he disregarded and

modified the plain language of the arbitration provision” in finding arbitration by AAA permissible

under the agreement.

 We find Point III dispositive, and agree that the AAA arbitrator exceeded his authority,

and thus the trial court erred in entering judgment confirming the arbitration award.

 Analysis

 “The Federal Arbitration Act (FAA) sets forth the grounds for which a court may vacate

an arbitration award.” Groceman v. Pulte Homes Corp., 53 S.W.3d 599, 601-02 (Mo. App. W.D.

2001) (citing 9 U.S.C. § 10) (internal citation omitted). Under the terms of the FAA, the trial court

must confirm an arbitration award unless one of the grounds “prescribed in sections 10 and 11”

applies. Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008). Pitts has invoked §

10(a)(4), which allows for vacatur of an arbitration award “where the arbitrators exceeded their

powers . . . .” 9 U.S.C. § 10(a)(4). “Whether the [arbitrator] exceeded [his] power is a legal question

subject to de novo review.” State ex rel. Greitens v. Am. Tobacco Co., 509 S.W.3d 726, 735 (Mo.

banc 2017).

 6
 An arbitrator derives his or her powers from the arbitration agreement, and “must give

effect to the contractual rights and expectations of the parties.” Stolt-Nielsen S.A. v. AnimalFeeds

Int’l Corp., 559 U.S. 662, 682 (2010) (internal marks omitted). “[P]arties are generally free to

structure their arbitration agreements as they see fit,” and courts have held “that parties may agree

to limit the issues they choose to arbitrate,” “may agree on rules under which any arbitration will

proceed,” and “may choose who will resolve specific disputes.” Id. at 683 (emphasis added)

(internal marks omitted); see also Greitens, 509 S.W.3d at 741 (Parties “may limit the scope of

arbitration, select the rules under which the arbitration is to proceed, and establish qualifications

for arbitrators.”). To that end, arbitrators exceed their powers if they decide matters which “were

clearly not submitted to them,” Behnen v. A.G. Edwards & Sons, Inc., 285 S.W.3d 777, 779 (Mo.

App. E.D. 2009), or if “the method of their appointment provided in the agreement has not been

followed,” Crawford Grp., Inc. v. Holekamp, 543 F.3d 971, 976 (8th Cir. 2008).

 Here, the parties agreed to arbitrate disputes before—but only before—NAF, and thus any

other arbitration organization lacked power to hear their disputes. See Hunter, 557 S.W.3d at 926-

29. In Hunter, the Missouri Supreme Court identified two types of arbitration agreements: “(1)

agreements in which the parties agree to arbitrate regardless of the availability of a named

arbitrator, and (2) agreements in which the parties agree to arbitrate before—but only before—a

specified arbitrator.” Id. at 926 (emphasis in original). “If the former, section 5 of the FAA[6]

authorizes and requires courts to name a substitute arbitrator when the agreement fails to identify

6
 9 U.S.C. § 5 provides:

 If in the agreement provision be made for a method of naming or appointing an arbitrator or
 arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if
 a method be provided and any party thereto shall fail to avail himself of such method, or if for any
 other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling
 a vacancy, then upon the application of either party to the controversy the court shall designate and
 appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said
 agreement with the same force and effect as if he or they had been specifically named therein[.]

 7
one or fails to provide a means for naming a substitute.” Id. “If the agreement is of the latter type,

however, nothing in the FAA authorizes (let alone requires) a court to compel a party to arbitrate

beyond the limits of the agreement it made.” Id.

 Like the agreement in Hunter, Pitts’s agreement was of the latter type. Pitts’s agreement

twice specified the parties’ sole chosen forum by stating that “the Arbitration Organization shall

be the National Arbitration Forum” and that “the Arbitration Organization is the National

Arbitration Forum.” And similar to the Hunter agreement, Pitts’s agreement also specified that

disputes would be resolved by the NAF rules then in effect. Cf. Hunter, 557 S.W.3d at 924-25

(“[A]ny claim or dispute . . . shall be resolved by binding arbitration by the National Arbitration

Forum, under the Code of Procedure then in effect.”). Contrary to Car Credit’s argument, we find

that the agreement between Pitts and Car Credit did not contemplate the use of other arbitration

organizations. See Resp. Br. 18 (arguing the agreement in Hunter, “unlike here, did not

contemplate that any other arbitration forum could be utilized”). In fact, the parties squarely

rejected the use of a different arbitration organization. Indeed, the agreement clearly provided the

parties the opportunity to identify an organization other than NAF, and, with equal clarity, the

parties unambiguously declined to do so, thereby demonstrating their unequivocal intent to

arbitrate before—and only before—NAF.

 We find Car Credit’s other attempts to distinguish Hunter similarly unconvincing. First,

Car Credit argues “the parties’ intent to allow arbitrator substitution” is found in their agreement

that the FAA governs their arbitration agreement, which, Car Credit asserts, “had the effect of

incorporating Section 5 of the FAA into the parties’ contract.” But the agreement in Hunter, too,

expressly stated it was subject to the FAA, see 557 S.W.3d at 925, and no “intent to allow arbitrator

substitution” was imputed on the parties by virtue of such provision.

 8
 Car Credit also attempts to distinguish this case from Hunter by pointing to (what Car

Credit has termed) a “Supremacy Clause” in Pitts’s agreement. The “Supremacy Clause” is the

provision that states: “If [NAF] rules conflict with this Arbitration Agreement, the terms of this

Arbitration Agreement shall apply.” While such a clause was not present in the Hunter agreement,

we fail to comprehend how this conflict-of-rules provision could be construed to evidence the

parties’ intent to arbitrate before an organization other than NAF.

 Finally, Car Credit asserts that here, unlike in Hunter, the parties entered into their

arbitration agreement after NAF ceased arbitrating consumer claims. However, this fact does not

alter our analysis. See Salsman v. Leonard, 568 S.W.3d 434 (Mo. App. W.D. 2019). In Salsman,

the parties agreed to arbitrate any dispute under the rules and procedures of “Construction

[A]rbitration Services”; however, that entity “had stopped providing arbitration services

approximately six years prior to the formation” of the parties’ agreement. 568 S.W.3d at 437.

Relying on Hunter, we concluded that the parties had agreed to arbitrate only before Construction

Arbitration Services, and thus we affirmed the trial court’s refusal to compel arbitration before

another entity. Id. at 442-43. In doing so, we noted that the defendant, as the drafter of the contract,

“had the ability to draft an agreement that contained an appointment method that would allow them

to select . . . nearly any arbitrator of their choosing,” and we declined to “provide [the defendant]

the benefit of a bargain that it did not secure itself.” Id. Nor will we provide Car Credit—the drafter

of the agreement here—with such a benefit.

 For the reasons described above, the AAA arbitrator had no power to arbitrate this dispute;

thus he exceeded his power in doing so and the award he rendered must be vacated pursuant to 9

U.S.C. § 10(a)(4). See PoolRe Ins. Corp. v. Organizational Strategies, Inc., 783 F.3d 256, 262-65

(5th Cir. 2015) (affirming trial court’s vacatur of arbitration award under 9 U.S.C. § 10(a)(4) where

 9
the arbitrator “had not been selected according to the contract-specified method” and failed to

arbitrate under the specific set of rules required by the arbitration agreement (internal marks

omitted)). Point III is granted.7

 Conclusion

 We reverse the judgment of the trial court confirming the arbitration award and remand

with instructions to vacate the award and any orders inconsistent with this opinion.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur.

7
 Because we grant Point III, we need not address the other points Pitts has raised in this appeal.

 10