

# SUPREME COURT OF MISSOURI
## en banc

CAR CREDIT, INC.,            )      *Opinion issued April 26, 2022*
                              )
             Respondent,     )
                              )
v.                                 )      No.  SC99335
                              )
CATHY L. PITTS,           )
                              )
             Appellant.       )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable Jennifer M. Phillips, Judge

Cathy Pitts appeals a Jackson County circuit court's judgment confirming an arbitration award in favor of Car Credit, Inc.  Pitts argues the arbitration agreement was invalid because the National Arbitration Forum was designated as the arbitrator and the National Arbitration Forum was not available to arbitrate the claim.  The circuit court's judgment is affirmed.

### Facts and Procedural History

In July 2011, Cathy Pitts entered into a Retail Installment Contract and Security Agreement ("the Obligation") with Car Credit to purchase and finance a vehicle.  As part of the transaction, Pitts and Car Credit entered into a written arbitration agreement ("the Arbitration Agreement"), providing in part:

A "Dispute" is any controversy or claim (other than a claim relating to our right to repossess the vehicle by self help, if permitted, or by judicial process) arising from or relating to the vehicle lease, loan or financing agreement (the "Obligation") you have entered into with us on the date shown above. The term "Dispute" includes but is not limited to the negotiation or breach of the Obligation, or the lease, sale, purchase or financing of the vehicle . . . . The term "dispute" also includes but is not limited to all tort claims arising from the transaction to which the Obligation relates or arising from our enforcement of the Obligation, and any question regarding whether a matter is subject to arbitration under this Arbitration Agreement.

. . . .

No class action arbitration may be ordered under this provision and there shall be no joinder of parties, except joinder of parties to the same Obligation.

The parties agree that transactions relating to the Obligation involve interstate commerce and that this Arbitration Agreement shall be subject to and governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-6, as amended.

The Arbitration Agreement also contained a delegation clause ("the Delegation Clause"):

You and we agree that if any Dispute arises, either you or we may choose to have the Dispute resolved by binding arbitration under the rules then in effect of the Arbitration Organization shown below (if no Arbitration Organization is shown below, the Arbitration Organization shall be the National Arbitration Forum). If such rules conflict with this Arbitration Agreement, the terms of this Arbitration Agreement shall apply. The election to arbitrate may be made even if an action has been filed in court, so long as no judgment has been rendered. We agree that we will not require you to arbitrate any individual claim (as opposed to a class claim) that you may bring against us in court involving an amount in controversy of $2,500 or less.

Finally, the bottom of the Arbitration Agreement provided a line to designate an

"Arbitration Organization (If none listed, the Arbitration Organization is the National

Arbitration Forum) See reverse side for addresses and phone numbers of arbitration organizations."[1] The parties left the line blank.

Car Credit sent Pitts a notice of repossession and plan to sell property after Pitts failed to make payments. Car Credit repossessed the vehicle and sued Pitts for the remaining deficiency balance. Pitts filed an answer and counterclaim, asserting a "consumer class action . . . seeking relief to redress an unlawful and deceptive pattern of wrongdoing followed by Car Credit regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies." Pitts also moved to dismiss the claim, but Car Credit voluntarily dismissed its petition.

Pitts moved to amend her counterclaim and assert class action claims against Car Credit. Car Credit moved to compel arbitration and stay court proceedings. The circuit court sustained Pitts' motion to amend, and overruled Car Credit's motion to compel arbitration. Pitts filed a motion for class certification, which the circuit court sustained.

Car Credit then renewed its motion to compel arbitration, which the circuit court sustained. As relevant here, the circuit court found: (1) the Arbitration Agreement contained an enforceable Delegation Clause that delegated threshold issues of arbitrability to the arbitrator; (2) Pitts failed to challenge the Delegation Clause; (3) the court was compelled to appoint a substitute arbitrator pursuant to the terms of the Arbitration Agreement and the Federal Arbitration Act ("the FAA"); and (4) Pitts had to

---

[1] The reverse side of the Arbitration Agreement was not included in the legal file, and the record indicates it was never presented to the circuit court or arbitrator.

3

proceed in individual arbitration before the substitute arbitrator, the American Arbitration Association ("the AAA"), as opposed to the National Arbitration Forum ("the NAF").

Pitts initiated arbitration before the AAA, but objected to the AAA arbitrator's jurisdiction. The AAA arbitrator concluded he had authority to arbitrate Pitts' claims and found the arbitration agreement was valid and enforceable. As relevant here, the AAA arbitrator further found: (1) the class claims were not subject to arbitration; (2) Pitts' claim was included in the term "Dispute" in the Arbitration Agreement; and (3) the AAA could be substituted for the NAF as the arbitration organization.

Pitts filed motions in the circuit court to reconsider the order sustaining the renewed motion to compel arbitration and to vacate the arbitration order regarding jurisdiction, which were both overruled. Pitts then sought writs of mandamus in the court of appeals and this Court, which were both denied.

The AAA arbitrator entered an award on the merits of Pitts' claim, in favor of Car Credit. Pitts filed motions in the circuit court to reconsider the order compelling arbitration and to vacate the arbitration award. Car Credit filed a motion to confirm the arbitration award, enter judgment in accordance therewith, and to decertify the class. The circuit court overruled Pitts' motions, and sustained Car Credit's motions. The circuit court entered an order confirming the arbitration award and decertifying the class. The circuit court entered judgment in Car Credit's favor "on all issues, claims, counterclaims, and/or causes of action in accordance with the January 21, 2020, arbitration award."

Pitts appealed, arguing the circuit court erred in entering judgment confirming the arbitration award in Car Credit's favor because the NAF was the exclusive agreed-upon

4

arbitration forum and the AAA arbitrator exceeded his authority. The court of appeals reversed the circuit court's order confirming the arbitration award. The court of appeals concluded the circuit court erred in entering judgment confirming the arbitration award because the arbitrator exceeded his authority in that the NAF was the only valid arbitration forum under the Arbitration Agreement. This Court granted transfer. Mo. Const. art. V, sec. 10.

## Standard of Review

"Whether the trial court should have granted a motion to compel arbitration is a question of law decided *de novo*." *Ellis v. JF Enters., LLC*, 482 S.W.3d 417, 419 (Mo. banc 2016). "This Court reviews *de novo* the legal issue of whether a valid, enforceable arbitration agreement exists." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 42 (Mo. banc 2017) (internal quotations and alteration omitted).

## Analysis

Pitts argues the circuit court erred in sustaining Car Credit's renewed motion to compel arbitration because the entire Arbitration Agreement must fail due to the NAF being designated as the arbitrator, and the NAF being unavailable to serve as the arbitrator.[2]

---

[2] The NAF no longer provides arbitration services for consumer claims nationwide.

> In July 2009, the Minnesota Attorney General sued NAF, alleging consumer fraud, deceptive trade practices, and false advertising. The complaint alleged NAF worked with creditors behind the scenes to ensure positive outcomes for creditors in intentionally and consistently one-sided arbitrations. Three days after suit was filed, NAF entered into a consent decree requiring it immediately to stop providing arbitration services for consumer claims nationwide[.]

*A-1 Premium Acceptance, Inc. v. Hunter*, 557 S.W.3d 923, 925 (Mo. banc 2018).

Arbitration is a matter of contract under the FAA. *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018). Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. "Section 5 is a default provision." *Hunter*, 557 S.W.3d at 926 n.3. "This means section 5 requires a court to appoint a substitute arbitrator unless it appears the parties did not intend to arbitrate before a substitute arbitrator in the event their chosen arbitrator became unavailable." *Id.*

"The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69. Questions of arbitrability include "whether the parties are bound by a given arbitration clause" and "[d]isputes over the formation of the parties' arbitration agreement and its enforceability or applicability to the dispute at issue." *Pinkerton*, 531 S.W.3d at 43.

6

"An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70. "A delegation provision giving an arbitrator the power to decide threshold issues of arbitrability 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Soars*, 563 S.W.3d at 114 (quoting 9 U.S.C. § 2).

"Generally, any silence or ambiguity concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Pinkerton*, 531 S.W.3d at 43 (internal quotations omitted). However, there is a presumption against arbitrability "when considering whether a court or an arbitrator should decide threshold questions of arbitrability[.]" *Soars*, 563 S.W.3d at 114. "'[C]lear and unmistakable evidence' the parties manifestly intended to arbitrate questions of arbitrability is required to overcome this presumption." *Id.* (alteration in original) (quoting *Rent-A-Ctr.*, 561 U.S. at 69 n.1).

"[A] party must specifically challenge a delegation provision to avoid its application." *Soars*, 563 S.W.3d at 116. "Invalidation of an arbitration agreement requires a specific challenge to the arbitration agreement, not to the contract as a whole." *Id.* at 114. "Arbitration agreements are severable and 'are to be considered separate and apart from any underlying or contemporaneously related agreement.'" *Id.* (quoting *Ellis*, 482 S.W.3d at 419). A delegation provision "should be treated as an *additional* 'written provision . . . to settle by arbitration a controversy.'" *Soars*, 563 S.W.3d at 114 (quoting *Rent-A-Ctr.*, 561 U.S. at 71) (emphasis in original). Without a challenge to the specific

delegation provision, "it is treated as valid and enforced—'leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'" *Soars*, 563 S.W.3d at 114 (quoting *Rent-A-Ctr.*, 561 U.S. at 72); *see* 9 U.S.C. §§ 2-4. "[T]he question of an arbitration agreement's validity as a whole is not for this Court to decide when the delegation provision is valid and enforceable." *Soars*, 562 S.W.3d at 115 n.3.

Therefore, contrary to Pitts' assertion, the issue here is the validity of the Delegation Clause. The Delegation Clause clearly states the parties intended to delegate to an arbitrator any disputes relating to or arising from the Obligation, except claims less than $2,500 and any class claims. The Delegation Clause covers the entire definition of "Dispute," including "any question regarding whether a matter is subject to arbitration under this Arbitration Agreement" and claims "arising from [the] enforcement of the Obligation."

Pitts' arguments fail to challenge the Delegation Clause specifically. Pitts argued to the circuit court that the selection of the NAF was so integral to the Arbitration Agreement that the entire Arbitration Agreement should be rendered invalid, and that there was no agreement to arbitrate all disputes, including the threshold gateway issues. On appeal, Pitts argued the "plain language of the Alleged Arbitration Agreement shows the parties agreed to arbitrate any clearly and unmistakably delegated arbitrability issues and issues on the merits before . . . the NAF." At no point did Pitts claim the Delegation Clause giving the arbitrator the power to decide gateway issues is unenforceable. Rather, Pitts claimed that the entire Arbitration Agreement is unenforceable.

8

Without a challenge to the Delegation Clause itself, Pitts cannot avoid its application. *Soars*, 563 S.W.3d at 116. This is true regardless of the language chosen by Pitts. *See Pinkerton*, 531 S.W.3d at 52 n.12 ("The dissenting opinion contends the record clearly shows Mr. Pinkerton specifically challenged the delegation provision and points to a motion he filed stating in capital letters that he 'disputes the existence and enforceability of any agreement to delegate issues of arbitrability to an arbitrator.' What the dissenting opinion ignores is that Mr. Pinkerton then proceeded to challenge the arbitration agreement as a whole."). Pitts' additional arguments on appeal provide no support for a challenge to the Delegation Clause, as both points challenge the merits of the Arbitration Agreement itself.[3]

---

[3] Even if this Court considered Pitts' arguments on the merits, the arguments fail. Pitts contends this Court's decision in *Hunter* requires the circuit court's order compelling arbitration to be reversed because the parties agreed to arbitrate before—but only before—the NAF and the AAA arbitrator had no power to arbitrate the dispute. 557 S.W.3d 923. In *Hunter*, this Court found the NAF was the only arbitrator with authority to arbitrate claims under an arbitration agreement providing, in part: "Any claim or dispute related to this agreement or the relationship or duties contemplated under this contract, including the validity of this arbitration clause, shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure then in effect . . . . [C]laims may be filed at any office of the National Arbitration Forum or at P.O. Box 50191, Minneapolis, MN 55405." *Id.* at 924-25 (emphasis omitted). The parties executed the arbitration agreement and underlying contracts three years before the NAF was required to stop providing arbitration services for consumer claims nationwide. *Id.* at 925. The circuit court overruled the motion to compel arbitration, and this Court affirmed. *Id.* at 925, 929. This Court identified two types of arbitration agreements: "(1) agreements in which the parties agree to arbitrate regardless of the availability of a named arbitrator, and (2) agreements in which the parties agree to arbitrate before—but only before—a specified arbitrator." *Id.* at 926.

> If the former, section 5 of the FAA authorizes and requires courts to name a substitute arbitrator when the agreement fails to identify one or fails to provide a means for naming a substitute. If the agreement is of the latter type, however, nothing in the FAA authorizes (let alone requires) a court to compel a party to arbitrate beyond the limits of the agreement it made.

*Id.* This Court found that what type of agreement is at issue is fact-dependent on the language of the arbitration agreement: "Several cases compelling arbitration notwithstanding NAF's unavailability turned on the fact the arbitration agreement named NAF and others (often the

9

The enforceability of the Arbitration Agreement due to the unavailability of the NAF is a matter of threshold arbitrability that is properly subject to arbitration so long as the Delegation Clause, standing alone, is valid.[4] Because Pitts failed to specifically

---

[AAA]) as potential arbitrators." *Id.* at 928 n.5. This Court found the parties in *Hunter* agreed to arbitrate only before the NAF because: (1) the arbitration agreement specifically named the NAF as the arbitrator, and (2) the arbitration agreement provided arbitration shall be resolved under the NAF Code of Procedure, which only the NAF may administer. *Id.* at 928-29. This Court concluded:

> [T]o be clear, merely identifying an arbitrator in an arbitration agreement— without more—cannot justify refusing to name a substitute under section 5 of the FAA on the ground the parties' agreement was limited to arbitrating before—but only before—the identified arbitrator. Instead, there must be a basis to conclude the parties' arbitration agreement was limited to the specified arbitrator.

*Id.* at 929.

In this case, there is no basis to conclude the Arbitration Agreement was limited only to the NAF. Several provisions of the Arbitration Agreement demand this result. First, the NAF was only a default arbitration organization: "if no Arbitration Organization is shown below, the Arbitration Organization shall be the [NAF]." The line allowing the parties to select an arbitration organization was left blank, and stated that the reverse side of the Arbitration Agreement provided "addresses and phone numbers of arbitration organizations." This is distinguishable from *Hunter* because the Arbitration Agreement contemplated that the NAF and other arbitration organizations may serve as the arbitrator and purported to give multiple addresses for those organizations. Second, even if this Court assumes the provision appointing the NAF as the default arbitrator is sufficient, the Arbitration Agreement provides no basis to conclude the Arbitration Agreement was limited to only the NAF. The Arbitration Agreement provides that, in the event of a conflict between the rules of the arbitration organization and the Arbitration Agreement, the terms of the Arbitration Agreement apply. This is distinguishable from *Hunter* because the Arbitration Agreement provides that the Arbitration Agreement, not the rules of the NAF or any other arbitration organization, controls the arbitration. Finally, the parties in *Hunter* executed the arbitration agreement three years prior to the NAF's unavailability to serve as the arbitrator. Here, the parties executed the Arbitration Agreement two years after the NAF became unavailable. This fact provides further support that the parties here did not contemplate the NAF was the only organization that could serve as the arbitrator because, if that were the case, the Arbitration Agreement would have had no force from the time of execution. In light of the provisions of the Arbitration Agreement and the facts surrounding the execution of the Arbitration Agreement, the circuit court could not justify refusing to name a substitute arbitrator under § 5 of the FAA. *Hunter*, 557 S.W.3d at 929.

[4] The FAA provides a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

10

challenge the Delegation Clause, this Court must treat it as valid under 9 U.S.C. § 2 "and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72.

## Conclusion

The circuit court's order confirming the arbitration award in favor of Car Credit is affirmed. [5]



Zel M. Fischer, Judge

Wilson, C.J., Russell, Breckenridge, Ransom
and Draper, JJ., and Broniec, Sp.J., concur.
Powell, J., not participating.

---

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. § 10(a)(1)-(4).

In the circuit court, Ms. Pitts argued the arbitration award should be vacated because the arbitrator "(1) exceeded his authority by ignoring the plain language of the Arbitration Agreement and (2) manifestly disregarded the law." An arbitrator's decision regarding properly delegated issues is given great deference, and "courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (internal quotations omitted). In challenges brought under 9 U.S.C. section 10(a)(4), "[o]nly if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Id.* at 569 (internal quotations and alternations omitted). The arbitrator's award must stand because he acted within "the scope of his contractually delegated authority" by interpreting the terms of the Arbitration Agreement and issuing an award. *Id.*

[5] Because this Court finds the Delegation Clause valid and affirms the circuit court's order compelling arbitration, it is not necessary to address Pitts' remaining claims.