

# SUPREME COURT OF MISSOURI
## en banc

LASHIYA D. ELLIS,          )
                                    )
               Respondent,    )
                                    )
v.                                  )     No. SC95066
                                    )
JF ENTERPRISES, LLC D/B/A    )
JEREMY FRANKLIN'S SUZUKI OF  )
KANSAS CITY,              )
                                    )
               Appellant.      )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable Jack Richard Grate, Judge

### Opinion issued January 12, 2016

JF Enterprises, LLC, appeals the circuit court's judgment denying JF Enterprises' application to compel arbitration and stay proceedings in a contract dispute concerning a car sale to Lashiya Ellis. The trial court refused to compel arbitration because the contract between Ms. Ellis and JF Enterprises was void under section 301.210.[1] Time and again, however, the United States Supreme Court has held that section 2 of the Federal Arbitration Act ("FAA") prohibits state courts from refusing to enforce an arbitration agreement on the ground that the underlying contract was void under state law. Because the FAA makes agreements to arbitrate severable from the other

---

[1] Unless otherwise noted, all statutory references are to RSMo 2000.

agreements of the parties, courts may only refuse to enforce an arbitration agreement if the party opposing arbitration brings a discrete challenge to the arbitration agreement – and not merely to the underlying or other contemporaneous contract – and shows that the arbitration agreement is invalid under generally applicable state law principles. Ms. Ellis has raised no discrete challenge to the arbitration provision distinct from her challenge to the underlying contract. Even though the sale between JF Enterprises and Ms. Ellis may well be void under section 301.210, that question (and the question of her remedies) is for the arbitrator to determine, not the courts. Accordingly, the trial court's judgment is vacated, and the case is remanded with instructions for the trial court to grant JF Enterprise's motion and compel arbitration.

## *Background*

On November 4, 2013, Ellis purchased a new car from JF Enterprises. Upon purchase, Ellis signed a retail buyers order and executed a retail installment contract. That same day, Ellis also signed an arbitration agreement that provided, in pertinent part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between [buyer] and [dealer] or [dealer's] employees, agents, successors or assigns, which arises out of or relates to [buyer's] credit application, purchase or condition of this vehicle, [buyer's] purchase or financing contract or any resulting transaction or relationship … shall, at [buyer] or [dealer's] election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Agreement shall not apply to such claim or dispute.

* * *

2

Any arbitration under this Arbitration Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) and not by state law concerning arbitration.

On July 11, 2014, Ellis filed the underlying petition for damages. She alleged JF Enterprises violated the Missouri Merchandising Practices Act by failing to pass title for her new vehicle in violation of section 301.210. Ellis requested the trial court declare the retail buyers order, retail installment contract, and arbitration agreement void and rescind the transaction under section 301.210.[2]

In its answer and motion to stay proceedings and compel arbitration, JF Enterprises asked the trial court to enforce the arbitration agreement between the parties. JF Enterprises argued Ellis' allegations arise out of or relate to her purchase of the car as contemplated by the arbitration agreement. Ellis maintained the contract documents, including the arbitration agreement, should be construed together and, when so construed, are void and unenforceable under section 301.210. JF Enterprises replied that the FAA governs the arbitration agreement and that, under applicable United States Supreme Court precedent, it is severable from the underlying sales contract and related agreements and must stand or fall without reference to them. The trial court overruled the motion to compel arbitration, finding:

> [N]o title to the 2012 Hyundai Sonata was provided to Plaintiff Lashiya D. Ellis at the time of the sale or since, and therefore, pursuant to Section 301.210 RSMo., the contract is fraudulent and void, and ... the arbitration provision which is to be construed with the other contract documents is

---

[2]  Ellis also filed a separate suit against the financing company, Condor Capital Corporation, but Condor Capital did not file a brief, participate in this appeal, or make any claim that it was a party to the arbitration agreement.

3

subject to [Ellis'] contract defenses of fraud and lack of consideration and is void, and therefore, not enforceable.

Thereafter, JF Enterprises filed an appeal under section 435.440.[3]

## *Analysis*

Whether the trial court should have granted a motion to compel arbitration is a question of law decided *de novo*. *Johnson ex rel. Johnson v. JF Enterprises, LLC*, 400 S.W.3d 763, 766 (Mo. banc 2013). "When faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). Here, there is no question that the FAA applies – both under the Supremacy Clause and as a matter of the parties' express agreement. Nor is there any dispute that the parties' arbitration agreement, if valid, covers the claims Ms. Ellis has asserted. Accordingly, the only issue before this Court is whether the arbitration agreement is valid.

Ms. Ellis contends that the arbitration agreement is not enforceable because it was signed as part of, and must be construed together with, the sales agreement, which section 301.210 would render "fraudulent and void" if no title was passed. She raises no challenge to the arbitration agreement distinct from the challenge she raises to the underlying contract. Instead, she argues that – if the latter falls – the former falls with it.

---

[3] Section 435.440.1(1) provides that "[a]n appeal may be taken from … [a]n order denying an application to compel arbitration." This Court has jurisdiction of the appeal under article V, section 10, of the Missouri Constitution.

4

Under Missouri law, Ms. Ellis may be right.  But the FAA, not Missouri law, governs what courts may consider in determining whether an agreement to arbitrate is enforceable.  Under the FAA, such agreements are "severable."  This means that they are to be considered separate and apart from any underlying or contemporaneous related agreements.  Of course, the FAA does not say that all purported arbitration agreements necessarily are enforceable.  It does provide, however, that such agreements are enforceable unless the arbitration agreement itself – in isolation – is invalid under generally applicable state law principles.  So sayeth the Supreme Court on three separate occasions, and it does not behoove this Court to parse its clear language in search of a way to achieve what the Supreme Court so clearly has held Congress and the FAA prevent.

The long pole of the tent in the Supreme Court's treatment of this issue is *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), in which the Court overturned the Florida Supreme Court for adopting the very argument urged by Ms. Ellis.  To illustrate the breadth and depth of the Supreme Court's unwillingness to indulge the argument that an arbitration agreement cannot be enforced if it is contained within a contract that is void under state law, the Supreme Court's rationale is set forth here in full:

> To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16.  Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts:
>
>> "A written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement

5

> in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. *See*, *e.g., Southland Corp. v. Keating,* 465 U.S. 1, 4–5, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (challenging the agreement to arbitrate as void under California law insofar as it purported to cover claims brought under the state Franchise Investment Law). The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. Respondents' claim is of this second type. The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), we addressed the question of who—court or arbitrator—decides these two types of challenges. The issue in the case was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id*., at 402, 87 S.Ct. 1801. Guided by § 4 of the FAA, *we held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate–– the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally*." *Id.,* at 403–404, 87 S.Ct. 1801 (internal quotation marks and footnote omitted). We rejected the view that the question of "severability" was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court. *See id.,* at 400, 402–403, 87 S.Ct. 1801.

Subsequently, in *Southland Corp.,* we held that the FAA "create[d] a body of federal substantive law," which was "applicable in state and federal courts." 465 U.S., at 12, 104 S.Ct. 852 (internal quotation marks omitted). We rejected the view that state law could bar enforcement of § 2, even in the context of state-law claims brought in state court. *See id*., at 10–14, 104 S.Ct. 852; see also *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270–273, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

*Prima Paint* and *Southland* answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an ***arbitration provision is severable*** from the remainder of the contract. Second, ***unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance***. Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that ***because respondents challenge the Agreement, but not specifically its arbitration provisions***, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.

In declining to apply *Prima Paint's* rule of severability, the Florida Supreme Court relied on the distinction between void and voidable contracts. "Florida public policy and contract law," it concluded, permit "no severable, or salvageable, parts of a contract found illegal and void under Florida law." 894 So.2d, at 864. **Prima Paint** *makes this conclusion irrelevant*. That case rejected application of state severability rules to the arbitration agreement *without discussing* whether the challenge at issue would have rendered the contract void or voidable. See 388 U.S., at 400–404, 87 S.Ct. 1801. Indeed, the opinion expressly disclaimed any need to decide what state-law remedy was available, *id.,* at 400, n. 3, 87 S.Ct. 1801 (though Justice Black's dissent *asserted* that state law rendered the contract void, *id.,* at 407, 87 S.Ct. 1801). Likewise in *Southland,* which arose in state court, we did not ask whether the several challenges made there—fraud, misrepresentation, breach of contract, breach of fiduciary duty, and violation of the California Franchise Investment Law—would render the contract void or voidable. We simply rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action. See 465 U.S., at 10, 104 S.Ct. 852. So also here, we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on "Florida public policy and contract law," 894 So.2d, at 864.

* * *

Respondents point to the language of § 2, which renders "valid, irrevocable, and enforceable" "a written provision in" or "an agreement in writing to submit to arbitration an existing controversy arising out of" a "contract." Since, respondents argue, the only arbitration agreements to which § 2

7

applies are those involving a "contract," and since an agreement void *ab initio* under state law is not a "contract," there is no "written provision" in or "controversy arising out of" a "contract," to which § 2 can apply. This argument echoes Justice Black's dissent in *Prima Paint:* "Sections 2 and 3 of the Act assume the existence of a valid contract. They merely provide for enforcement where such a valid contract exists." 388 U.S., at 412–413, 87 S.Ct. 1801. ***We do not read "contract" so narrowly***. The word appears four times in § 2. Its last appearance is in the final clause, which allows a challenge to an arbitration provision "upon such grounds as exist at law or in equity for the revocation of any *contract*." (Emphasis added.) ***There can be no doubt that "contract" as used this last time must include contracts that later prove to be void***. Otherwise, the grounds for revocation would be limited to those that rendered a contract voidable—which would mean (implausibly) that an arbitration agreement could be challenged as voidable but not as void. ***Because the sentence's final use of "contract" so obviously includes putative contracts, we will not read the same word earlier in the same sentence to have a more narrow meaning***. We note that neither *Prima Paint* nor *Southland* lends support to respondents' reading; as we have discussed, neither case turned on whether the challenge at issue would render the contract voidable or void.

*Buckeye*, 546 U.S. at 443–48 (emphasis added) (footnotes omitted).[4]

This unambiguous interpretation of section 2 of the FAA continues to be the law of the land. In 2010, the Supreme Court again stated the general rule explained in *Buckeye*:

There are two types of validity challenges under § 2: "***One type challenges specifically the validity of the agreement to arbitrate***," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." In a line of cases neither party has asked us to overrule, ***we held that only the first type of challenge is relevant to a***

---

[4]  In reaching this conclusion, *Buckeye* squarely rejects the dissenting justice's contention (echoed by Ms. Ellis here) that "the FAA cannot be the basis for displacing a state law that prohibits enforcement of an arbitration clause contained in a contract that is unenforceable under state law." *Id.* at 449 (Thomas, J., dissenting).

8

> ***court's determination whether the arbitration agreement at issue is enforceable***.

* * *

> In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. Thus, in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone. ***But even where that is not the case––as in Prima Paint itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract––we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene***.

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (emphasis added) (quotations and citations omitted).[5] In so holding, the Court accepted without quibble the dissenting justice's succinct characterization that "*Prima Paint* and its progeny allow a court to pluck from a potentially invalid *contract* a potentially valid *arbitration agreement*." *Id.* at 84–85 (Stevens, J., dissenting) (emphasis in original).

More recently, the Supreme Court took the Oklahoma Supreme Court to task for accepting precisely the argument that Ms. Ellis would have this Court accept in this case.

> The Oklahoma Supreme Court's decision disregards this Court's precedents on the FAA. That Act, which "declare[s] a national policy favoring arbitration," *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a

---

[5] *Jackson* was concerned with an arbitration agreement that purported to delegate to the arbitrator issues that, otherwise, properly would have been decided by the court. There is no question of delegation in this case, however, because nothing in the parties' arbitration agreement purports to delegate the threshold issue of the validity of the arbitration agreement – severed of its context and contemporaneous agreements – for decision by the arbitrator. The FAA reserves that issue to the courts, and these parties made no agreement to have it heard and decided elsewhere.

controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is well settled that "the substantive law the Act created [is] applicable in state and federal courts." *Southland Corp., supra,* at 12, 104 S.Ct. 852; *see also Buckeye, supra,* at 446, 126 S.Ct. 1204. And when parties commit to arbitrate contractual disputes, ***it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved "by the arbitrator in the first instance, not by a federal or state court*.**" *Preston v. Ferrer,* 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008); see also *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). For these purposes, an "arbitration provision is severable from the remainder of the contract," *Buckeye, supra,* at 445, 126 S.Ct. 1204, and ***its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide***.

*Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (emphasis added). No matter what logic or fairness may undergird Ms. Ellis' arguments, to accept them would invite – if not require – a similar rebuke.

Accordingly, no matter what state law infirmity the sales contract between Ms. Ellis and JF Enterprises may have, whether it fails for lack of consideration, failure of consideration, fraud in the inducement, unconscionability or being declared "fraudulent and void" under section 301.210, the Supreme Court has held – clearly and repeatedly – that such an infirmity is irrelevant to the enforceability of an arbitration agreement contained within or executed contemporaneously. Under *Prima Paint*, *Buckeye*, and *Nitro-Lifts*, only a discrete challenge directed specifically at the arbitration agreement itself – viewed severally and in isolation from its allegedly void context – and showing that it is invalid under generally applicable state law principles will prevent an arbitration agreement's enforcement. Ms. Ellis makes no such claim. Instead, she claims

10

that the arbitration agreement is unenforceable because the underlying contract is void under section 301.210.

Nor does it suffice for Ms. Ellis to argue that there is no consideration for the arbitration agreement because JF Enterprises failed to deliver title and, under section 301.210, such a failure renders the sales contract "fraudulent and void." This logic would have applied equally well in *Prima Paint*, *Buckeye*, and *Nitro-Lifts*, yet the Supreme Court refused to entertain such an exception to its holding that the FAA limits courts to determining only whether the arbitration agreement – "plucked" from its context – is valid without regard to the validity of any underlying or contemporaneous contracts. As a result, Ms. Ellis' argument that section 301.210 renders the arbitration agreement without consideration is not a "discrete challenge" to the arbitration agreement because it requires the court to determine whether the sales contract is void in order to determine whether to enforce the arbitration agreement. Such end-runs around section 2 of the FAA have been directly – and repeatedly – rejected by the Supreme Court in in *Prima Paint*, *Buckeye*, and *Nitro-Lifts,* and this Court is bound to follow those decisions.

### *Conclusion*

Because Ellis' challenge is based on the validity and performance of the sales contract as a whole and not aimed discretely at the arbitration agreement alone, the trial court erred when it concluded that the arbitration agreement was void and unenforceable under section 301.210. Accordingly, the trial court's order is vacated and the cause

11

remanded with instructions to enter an order staying Ellis' suit against JF Enterprises and compelling arbitration between Ellis and JF Enterprises.

_____
Paul C. Wilson, Judge

Breckenridge, C.J., Fischer and Russell, JJ., concur;
Teitelman, J., dissents in separate opinion filed;
Stith and Draper, JJ., concur in opinion of Teitelman, J.



# SUPREME COURT OF MISSOURI
## en banc

LASHIYA D. ELLIS, )
)
Respondent, )
)
v. ) No. SC95066
)
JF ENTERPRISES, LLC D/B/A )
JEREMY FRANKLIN'S SUZUKI OF )
KANSAS CITY, )
)
Appellant. )

## DISSENTING OPINION

I respectfully dissent. The principal opinion holds that federal law requires

Ms. Ellis to arbitrate her claim against JF Enterprises because she did not specifically

establish that the arbitration agreement is invalid under generally applicable state law

principles. Federal law does not, however, require Ms. Ellis to arbitrate claims relating to

the formation of the contract and that are not subject to arbitration according to the plain

language of the arbitration contract.

When the formation of the arbitration contract is at issue, "state courts are

permitted to apply state law defenses to the formation of the particular contract at issue."

*Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014). State law defenses to

the formation of a contract include lack of consideration because legal consideration is

1

essential for the formation of any contract, including one for arbitration. *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476 (Mo. App. 2010). Ms. Ellis asserts that neither the sales contract nor the arbitration clause was supported by legal consideration because JF Enterprises failed to deliver title pursuant to section 301.210, RSMo 2000. Ms. Ellis raises a plausible claim, as there are cases holding that the failure to comply with the delivery requirement of section 301.210 means that the contract fails for lack of consideration. *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 203 (Mo. App. 2013) (citing *Public Fin. Corp. of Kansas City, Mo., No. 1 v. Shemwell*, 345 S.W.2d 494, 497-498 (Mo. App. 1961); *Smith v. G.F.C. Corp.*, 255 S.W.2d 69 (Mo. App. 1953); *C.I.T. Corp. v. Byrnes*, 38 S.W.2d 750, 752 (Mo. App. 1931); *Morgan v. Mulcahey*, 298 S.W. 242, 245 (Mo. App.1927)). Therefore, Ms. Ellis' challenge to the formation of the contract rests squarely on state law defenses that are subject to resolution by the courts rather than in arbitration.

Any doubt as to whether Ms. Ellis should be required to submit to arbitration is removed by analyzing the language of the arbitration contract. The contract provides for the arbitration of "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute) … which arises out of or relates to [buyer's] credit application, purchase or condition of this vehicle, [buyer's] purchase or financing contract or any resulting transaction or relationship …." The plain language of the arbitration contract specifically limits the range of disputes subject to arbitration to those involving the financing, purchase or condition of the vehicle. At no point does the arbitration contract

2

purport to authorize the arbitration of defenses pertaining to the formation of the sales contract.   Ms. Ellis should not be compelled to arbitrate a claim that she did not agree to arbitrate.

The trial court's judgment should be affirmed.

_____
Richard B. Teitelman, Judge