

# In the
## Missouri Court of Appeals
### Western District

| | | |
|---|---|---|
| **NELSON TRUCKING, LLC,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD86571** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **AUGUST 20, 2024** |
| **K&M TRANSLOGIC, LLC AND** | ) | |
| **KM DIESEL & TIRE SERVICES, LLC,** | ) | |
| | ) | |
| **Appellants.** | ) | |

**Appeal from the Circuit Court of Andrew County, Missouri**
The Honorable David Lynn Bolander, Judge

Before Division One:  Edward R. Ardini, Jr., Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

K&M Translogic, LLC ("K&M Translogic") and KM Diesel & Tire Services, LLC ("KM Diesel & Tire Services") (collectively "the Appellants") appeal from the trial court's order denying a motion to compel arbitration.   The Appellants assert that the arbitration clause in an agreement between K&M Translogic and Nelson Trucking, LLC ("Nelson Trucking") includes within its scope claims asserted by Nelson Trucking in a lawsuit.  Because KM Diesel & Tire Services is not aggrieved by the trial court's order denying the motion to compel arbitration, it has no standing to appeal.  Because the equipment at issue in Nelson Trucking's lawsuit is not identified in the agreement with

K&M Translogic, Nelson Trucking's claims in the lawsuit are not within the scope of the arbitration clause.

KM Diesel & Tire Services's appeal is dismissed for lack of standing. Finding no error in the trial court's order denying K&M Translogic's motion to compel arbitration, we affirm.

## Factual and Procedural Background[1]

On February 10, 2018, K&M Translogic and Nelson Trucking entered into an independent contractor agreement and equipment lease ("Contract"). The Contract identifies K&M Translogic as a company "in the business of providing pick-up, delivery and general freight transportation, handling and distribution services in interstate and intrastate commerce [that] desires to use the services and/or equipment" of Nelson Trucking. The Contract describes Nelson Trucking as a company that "owns and operates a business that provides pick-up, delivery and transportation services and owns, leases, controls and/or otherwise has access to motor vehicular and other equipment and accessories as are necessary to conduct such business." The Contract generally provides that Nelson Trucking will lease vehicles and equipment to K&M Translogic, and will pay to maintain the leased vehicles and equipment, in exchange for 70 percent of the gross rate received by K&M Translogic from use of the leased vehicles and equipment.

---

[1]"We defer to the trial court's express factual determinations, and we view all other facts in the light most favorable to the court's ruling." *Trunnel v. Mo. Higher Educ. Loan Auth.*, 635 S.W.3d 193, 195 n.1 (Mo. App. W.D. 2021) (quoting *Sharp v. Kansas City Power & Light Co.*, 457 S.W.3d 823, 824 n.1 (Mo. App. W.D. 2015)).

2

The Contract identifies the vehicles and equipment leased by K&M Translogic from Nelson Trucking as follows:

> [Nelson Trucking] shall, at [Nelson Trucking's] sole and exclusive cost and expense, provide, and does hereby lease to [K&M Translogic] . . . the vehicles and equipment described in **Equipment Receipts**, which are attached hereto and by reference incorporated herein (the "Vehicles"). A separate **Equipment Receipt** shall be prepared and attached hereto for each vehicle leased and provided hereunder and same shall be identified as **Exhibit A** and sub-numbered seriatim as **Exhibit A(1), Exhibit A(2), etc.** (all and each of which shall hereinafter be collectively referred to simply as "**Exhibit A**"). Vehicles may be substituted, additional vehicles may be provided and/or vehicles may be withdrawn from the provisions of this Lease, as the Parties may agree from time to time, in which event Exhibit A shall be amended or supplemented and the revised Exhibit A containing a separate, consecutively numbered Equipment Receipt for each vehicle then under lease, shall be attached hereto and incorporated by reference herein.

Exhibit A to the Contract is an equipment receipt identifying a 2009 Freightliner, otherwise identified as number 130, as the equipment leased by Nelson Trucking to K&M Translogic. No other equipment receipts appear in Exhibit A to the Contract.

The Contract includes an arbitration clause: "The Parties hereby agree that all claims, disputes and controversies between [K&M Translogic] and [Nelson Trucking] arising from or relating to any matters arising under this Agreement, except as limited as described herein, shall be submitted to binding arbitration." The Contract also includes an integration provision that states the Contract is "the full and complete understanding existing by and between the Parties concerning the subject matter hereof and may not be modified or amended except by a written instrument signed by the Parties."

On March 29, 2023, Nelson Trucking filed a lawsuit in the Circuit Court of Andrew County against K&M Translogic. On April 13, 2023, Nelson Trucking

3

filed an amended petition ("Amended Petition") that named both K&M Translogic and KM Diesel & Tire Services as defendants. The Amended Petition asserted claims for: (1) replevin, seeking possession of a 1998 Peterbilt and a 2004 Peterbilt; (2) conversion, seeking damages from the Appellants for their possession of a 1998 Peterbilt and a 2004 Peterbilt after Nelson Trucking demanded the return of the property; and (3) an accounting for all revenue and expenses related to the 1998 Peterbilt and the 2004 Peterbilt. The replevin and conversion claims are asserted against both of the Appellants, but the action for an accounting is asserted only against K&M Translogic. Although the caption of the Amended Petition refers to "breach of contract," none of the allegations in the Amended Petition refer to the Contract, and no claim was pled for breach of contract. Following a case review hearing on May 15, 2023, the trial court made a docket entry noting that "replevin is resolved."

The Appellants filed a motion to compel arbitration on July 5, 2023 ("Motion to Compel Arbitration"). The Motion to Compel Arbitration asserted that KM Diesel & Tire Services "conducts maintenance and repair work on truck tractors and trailers upon request for agreed-upon compensation;" that KM Diesel & Tire Services only had possession of the 1998 Peterbilt and 2004 Peterbilt while it was performing maintenance and repairs; and that both vehicles have been returned to Nelson Trucking fully repaired. The Motion to Compel Arbitration asserted that in light of return of the vehicles there are

4

no other allegations in Nelson Trucking's Amended Petition "which would form the basis for a proper cause of action" against KM Diesel & Tire Services.[2]

With respect to K&M Translogic, the Motion to Compel Arbitration alleged that because the 1998 Peterbilt and 2004 Peterbilt had been returned to Nelson Trucking, the only remaining disputes "between the parties center[] on the amounts due Nelson [Trucking] for compensation, proper deductions made from compensation, amounts due for maintenance of and repairs to the [1998 Peterbilt and the 2004 Peterbilt] and related issues. " The Motion to Compel Arbitration argued that these issues "all . . . clearly arise from and are governed by the terms of the [Contract]." The Motion to Compel Arbitration specifically identified the Contract, referred to the arbitration clause in the Contract, and attached a copy of the Contract as an exhibit. The Motion to Compel Arbitration argued that under both the Federal Arbitration Act ("FAA")[3] and the Missouri Uniform Arbitration Act ("MUAA"),[4] the trial court was required to compel arbitration. Notably, in the prayer for relief, K&M Translogic sought an order from the trial court compelling arbitration, but KM Diesel & Tire Services did not seek an order compelling arbitration, consistent with the fact that KM Diesel & Tire Services is not a party to the Contract.

---

[2]Though the trial court's May 15, 2023 docket entry suggests the replevin claim in the Amended Petition had been resolved, KM Diesel & Tire Services remained named as a defendant in the conversion claim.

[3]9 U.S.C. section 1 *et seq.* (Westlaw through Pub. L. No. 118-70).

[4]Sections 435.350-435.470. All statutory references are to RSMo 2016 as supplemented through February 10, 2018, unless otherwise indicated.

Nelson Trucking filed suggestions in opposition to the Motion to Compel Arbitration ("Suggestions in Opposition").[5]  Nelson Trucking asserted that the Contract, and the arbitration clause therein, "do[] not govern the relationship between the parties with regard to the [1998 Peterbilt and 2004 Peterbilt] on which the claims in the Amended Petition are based."   Nelson Trucking noted that the Contract allows for the "substitution or amendment of vehicles covered by the [Contract]" but that the Contract was never amended pursuant to the terms of the Contract to include the 1998 Peterbilt and the 2004 Peterbilt.

The trial court conducted a hearing on the Motion to Compel Arbitration on August 21, 2023.  M.L., a co-owner of both K&M Translogic and KM Diesel & Tire Services, testified about the Contract.  M.L. testified that K&M Translogic regularly entered into lease agreements with trucking companies that own truck tractors.  K&M Translogic would hire a driver to use the leased equipment to deliver goods.  M.L explained that, after a load of goods is delivered, K&M Translogic and the lessor of the equipment would each receive a portion of the payment for the delivery, as provided in the lease agreement.  M.L. testified that K&M Translogic entered into such an agreement,

_____

[5]Nelson Trucking also filed a motion to enforce escrow agreement on August 14, 2023.  The motion to enforce escrow agreement alleged that it entered into an escrow agreement in April 2023 with K&M Translogic wherein Nelson Trucking agreed to deposit $55,000 in its attorney's trust account until the parties could resolve their dispute regarding the amount Nelson Trucking owes K&M Translogic for advanced expenses.  After taking up Nelson Trucking's motion to enforce escrow agreement during a hearing on August 14, 2023, the trial court denied the motion, finding it was premature.  Because the trial court's ruling on the motion to enforce escrow agreement is not before us on appeal, we do not discuss the ruling further.  We do, however, reference the escrow agreement in our discussion of the Appellants' second point on appeal.

specifically the Contract, with Nelson Trucking on February 10, 2018, and that at the time of the Contract, K&M Translogic agreed to lease number 130, a 2009 Freightliner, from Nelson Trucking.

M.L. acknowledged that the Contract provided a procedure for amendment of the equipment receipts to be attached as exhibit A to the Contract, in the event that the parties later agreed to lease additional equipment. M.L. further testified that the parties did not execute such an amendment for the 1998 Peterbilt and 2004 Peterbilt, even though both were leased by Nelson Trucking to K&M Translogic after the Contract was executed. M.L. testified that, even though the parties did not amend the Contract, they acted as if the Contract applied to the 1998 Peterbilt and 2004 Peterbilt. M.L. testified that the relationship between K&M Translogic and Nelson Trucking soured in 2022 or 2023 due to a dispute related to truck repair and maintenance completed by KM Diesel & Tire Services.

After hearing arguments from the parties, the trial court took the Motion to Compel Arbitration under advisement. The trial court issued an order on September 4, 2023, denying the Motion to Compel Arbitration ("Order"). The Order referred throughout to "defendant" in the singular, and made the following findings:

1. The parties had entered into an agreement for the rental and operation of a Freightliner tractor that contained an arbitration clause and with specific provisions for extending the agreement to add additional vehicles to the agreement.

2. Later the parties placed two Peterbilt tractor trailers into service, but failed to follow the provisions to add additional vehicles and extend the agreement.

7

3. This Court finds that all their [sic] was no valid written agreement between the parties, and therefore, the arbitration clause does not apply.

The Appellants filed this timely appeal.[6]

## KM Diesel & Trucking Services Has No Standing to Appeal

The right to appeal is purely statutory so that, if a statute does not give the right to an appeal, none exists. *Larson v. Winkler*, 690 S.W.3d 193, 199 (Mo. App. W.D. 2024). Thus, before considering the substantive issues raised by an appeal, we first have an obligation to determine whether we have authority to decide the appeal. *Keeling v. Preferred Poultry Supply, LLC*, 621 S.W.3d 672, 676 (Mo. App. S.D. 2021). In determining whether a litigant may appeal from a trial court's order refusing to compel arbitration, we look to Missouri law for procedural matters "as long as the procedure does not defeat any of the rights granted in the applicable substantive law." *Id.*

The Appellants assert in their jurisdictional statement that we have jurisdiction to consider the appeal pursuant to section 435.440.1(1), which permits an appeal from an order denying an application to compel arbitration, and assert that the FAA, particularly 9 U.S.C. section 16(a)(1), also allows such an appeal. Section 435.440.2 provides that an appeal from an order denying a motion to compel arbitration "shall be taken in the

---

[6]Both the FAA and the MUAA permit an immediate appeal from an interlocutory order denying a motion to compel arbitration. *See* 9 U.S.C. section 16(a)(1)(C) (Westlaw through Pub. L. No. 118-70) ("An appeal may be taken from . . . an order . . . denying an application . . . to compel arbitration . . . ."); section 435.440.1(1) ("An appeal may be taken from . . . [a]n order denying an application to compel arbitration made under section 435.355 . . . ."). "An order denying a motion to compel arbitration need not be denominated as a 'judgment' under Rule 74.01(a) in order to be appealed." *GFS, II, LLC v. Carson*, 684 S.W.3d 170, 176 n.1 (Mo. App. W.D. 2023) (citing *Trunnel*, 635 S.W.3d at 197 n.2).

manner and to the same extent as from orders or judgments in a civil action." Section 512.020 governs the right to appeal in a civil action. It affords the right to appeal to "[a]ny party to a suit aggrieved by any judgment of any trial court in any civil case." Section 512.020. "[A] party cannot be said to be 'aggrieved,' unless error has been committed against him.'" *Howe v. Heartland Midwest, LLC*, 604 S.W.3d 774, 779 (Mo. App. W.D. 2020) (quoting *Shoate v. State*, 529 S.W.3d 869, 876 (Mo. App. W.D. 2017)). In other words, the party must be aggrieved by the particular judicial act about which it complains on appeal so that the party has suffered from an infringement or denial of its "personal or property rights or interests." *Price v. Thompson*, 616 S.W.3d 301, 307 (Mo. App. W.D. 2020). "A party who has not been aggrieved by a judgment has no right or standing to appeal." *Howe*, 604 S.W.3d at 779 (quoting *T.V.N. v. Mo. State Highway Patrol Crim. Just. Info. Servs.*, 592 S.W.3d 74, 79 (Mo. App. W.D. 2019).

Both K&M Translogic and KM Diesel & Tire Services have appealed from the trial court's Order denying the Motion to Compel Arbitration. There is no question that K&M Translogic is aggrieved by the Order denying the Motion to Compel Arbitration because it is a party to the Contract wherein it agreed with Nelson Trucking to arbitrate disputes arising out of the Contract, and the trial court's Order denies K&M Translogic's specific request to submit the claims against it to arbitration. In other words, the Order "operate[d] prejudicially and directly on [K&M Translogic's] personal or property rights or interests." *Price*, 616 S.W.3d at 307. The same cannot be said for KM Diesel & Tire Services.

9

While KM Diesel & Tire Services jointly filed the Motion to Compel Arbitration with K&M Translogic, it is uncontested that KM Diesel & Tire Services is not a party to the Contract which includes the arbitration clause. Consistent with this fact, KM Diesel & Tire Services did not ask the trial court to compel arbitration of claims asserted against it, and instead the only relief sought by the Motion to Compel Arbitration was as follows:

> Defendant, [K&M Translogic] respectfully prays that this Court enter an order transferring this cause to the AAA for arbitration, as agreed by the parties in the [Contract] . . . .

The Order denying the Motion to Compel Arbitration spoke of "the defendant" in the singular. And, in denying the Motion to Compel Arbitration, the Order expressly referenced the Contract, an agreement as to which KM Diesel & Tire Services was not a party.

KM Diesel & Tire Services has no "personal or property right or interest" in the Contract or in the arbitration clause set forth therein. KM Diesel & Tire Services sought no relief in the Motion to Compel Arbitration and is not aggrieved by the Order denying the Motion to Compel Arbitration. Accordingly, KM Diesel & Tire Services does not have standing to appeal the Order, and we dismiss its appeal.

**Standard of Review**

"Whether the trial court should have granted a motion to compel arbitration is a question of law decided *de novo*." *Car Credit, Inc. v. Pitts*, 643 S.W.3d 366, 370 (Mo. banc 2022) (quoting *Ellis v. JF Enters., LLC*, 482 S.W.3d 417, 419 (Mo. banc 2016)). When determining whether it is appropriate to compel arbitration, the trial court "must determine whether a valid arbitration agreement exists and, if so, whether the specific

10

dispute falls within the scope of the arbitration agreement." *Ellis*, 482 S.W.3d at 419

(quoting *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006)).

The party seeking to compel arbitration has the burden to prove the existence of an

agreement to arbitrate by competent evidence. *Brown v. GoJet Airlines, LLC*, 677

S.W.3d 514, 519 (Mo. banc 2023) (citing *Brown v. Chipotle Servs., LLC*, 645 S.W.3d

518, 523-24 (Mo. App. W.D. 2022)). If the party opposing a motion to compel

arbitration challenges the existence of an arbitration agreement on a *factual* basis, "the

[trial] court's judgment [on that issue] will be affirmed unless there is no substantial

evidence to support it, it is against the weight of the evidence, or it erroneously declares

or applies the law." *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc

2020) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). If the party

opposing a motion to compel arbitration does not challenge the existence of an arbitration

agreement on a factual basis, but instead opposes the motion for "purely legal reasons,"

our review of the trial court's judgment is *de novo*. *Bridgecrest Acceptance Corp. v.

Donaldson*, 648 S.W.3d 745, 751 (Mo. banc 2022). A "purely legal" challenge to a

motion to compel arbitration includes whether a particular dispute falls within the scope

of an arbitration agreement. *Id.*

Here, there is no factual dispute about the existence of an arbitration agreement

between K&M Translogic and Nelson Trucking. The Contract is acknowledged by

Nelson Trucking in its Suggestions in Opposition to the Motion to Compel Arbitration.

The presence of an arbitration clause in the Contract is also acknowledged. Instead, the

issue is whether the arbitration clause in the Contract includes within its scope the

11

disputes framed by the Amended Petition.  Whether viewed as an argument that no valid, enforceable arbitration agreement covers these disputes or as an argument that the acknowledged arbitration clause does not include these disputes within its scope, the issue is the same.  Determining the scope of an arbitration agreement requires application of "the usual rules of state contract law and canons of contract interpretation" in order to "ascertain the intent of the parties through the plain and ordinary meaning of the contract terms and give effect to that intent."  *Mackey v. Schooler's Constr., L.L.C.*, 640 S.W.3d 792, 798 (Mo. App. W.D. 2022) (quoting *St. Louis Reg'l Convention & Sports Complex Auth. v. Nat'l Football League*, 581 S.W.3d 608, 617 (Mo. App. E.D. 2019)).

**Analysis**

K&M Translogic presents three points on appeal challenging the trial court's denial of the Motion to Compel Arbitration.  We address the points separately.

In its first point on appeal, K&M Translogic argues that the arbitration clause in the Contract is governed by the FAA, that the arbitration clause must be severed and separately enforced, and that the trial court erred "by ruling on the enforceability of the underlying Contract rather than . . . compelling arbitration."

It is uncontested that the arbitration clause in the Contract is governed by the FAA.  The FAA and the MUAA are "substantially similar."  *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015) (quoting *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015)).  The FAA "governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce."  *Id.*  The MUAA,

12

on the other hand, "governs those Missouri arbitration matters not preempted by the FAA." *Id.*

The United States Supreme Court has construed the scope of interstate commerce broadly, holding that "the FAA encompasses a wider range of transactions than those actually 'in commerce'--that is, 'within the flow of interstate commerce." *State ex rel. Hewitt*, 461 S.W.3d at 805 (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)). "[T]he FAA applies even when, for example, an arbitration agreement is executed in a single state by residents of that state if one of the parties to the agreement engages in business in multiple states." *Id.* (citing *Citizens Bank*, 539 U.S. at 57). Here, the Contract provides that K&M Translogic is engaged in interstate and intrastate commerce. Because the contract concerns activities "within the flow of interstate commerce," the FAA preempts the MUAA and applies to our review of the arbitration clause.

K&M Translogic is correct that under the FAA, an arbitration clause is severable, and thus separately enforceable, from the remainder of a contract. *Ellis*, 482 S.W.3d at 421 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 400, 445 (2006)). "When another aspect of the larger contract is faulty, an embedded or incorporated agreement to arbitrate may be considered 'separate and apart' from the rest of the contract and may still be enforceable under the FAA even when another aspect of the larger contract is not." *Bridgecrest Acceptance Corp.*, 648 S.W. 3d at 753. In its application, this severability rule permits a trial court to determine the independent validity of an arbitration clause (if challenged), but requires the broader issue of a contract's validity to

13

be "considered by the arbitrator in the first instance." *Ellis*, 482 S.W.3d at 421 (emphasis omitted). Thus, if a party challenges the validity of a contract as a whole, without specifically (and separately) challenging the validity of an arbitration provision within the contract, the arbitration provision is "enforceable apart from the remainder of the contract," and that "challenge should . . . be considered by an arbitrator, not a court." *Id.* Challenges to the validity of a contract involve "grounds as exist at law or in equity for the revocation of any contract," including "a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing Inc.*, 546 U.S. at 444. "The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Id.* at 444 n.1.

While K&M Translogic has accurately captured the law regarding the severability of arbitration clauses under the FAA, the discussion has no bearing on our *de novo* review of the trial court's Order. Nelson Trucking has never challenged the validity of the Contract as a whole. Nor has Nelson Trucking challenged the validity of the arbitration clause independent from the Contract. Instead, Nelson Trucking's position has consistently been that the arbitration clause, which requires the parties to arbitrate "all claims, disputes and controversies . . . *arising from or relating to any matters arising under this Agreement*," does not include within its scope disputes regarding the 1998 Peterbilt and the 2004 Peterbilt, as those vehicles are not identified in the Contract.

14

Nelson Trucking made this quite clear at the hearing on the Motion to Compel

Arbitration, when it argued:

> [K&M Translogic and Nelson Trucking] did have an independent
> contractor agreement. If we were talking about that first vehicle[, the 2009
> Freightliner], we'd be in arbitration. But we're not. We're talking about the
> subsequent two vehicles[, the 1998 Peterbilt and the 2004 Peterbilt], and
> there's no agreement, in writing or otherwise, that's going to be able to
> compel arbitration upon it . . . . [A]rbitration provisions . . . require a
> writing. There's been no evidence of that anywhere here.

The trial court's Order denying the Motion to Compel Arbitration expressly found that

K&M Translogic and Nelson Trucking had a written Contract; that the Contract included

an arbitration clause; that the Contract included specific provisions for extending the

agreement to add additional vehicles; that the parties never amended the Contract to add

the two vehicles at issue in the Amended Petition: and that as a result, there "was no valid

written agreement between the parties" to arbitrate disputes involving the 1998 Peterbilt

and the 2004 Peterbilt, and "the arbitration clause [in the Contract] does not apply" to

disputes involving those vehicles. These are not findings that address whether the

arbitration clause was valid or whether the Contract was valid. Instead these findings

relate directly and only to the scope of the arbitration clause in the Contract, and more

specifically, to whether disputes involving the 1998 Peterbilt and the 2004 Peterbilt are

within the scope of the arbitration clause.

Because severability is not implicated by the Motion to Compel Arbitration, by

Nelson Trucking's Suggestions in Opposition to the Motion to Compel Arbitration, or by

the trial court's Order refusing to compel arbitration, K&M Translogic's first point on appeal is denied.[7]

In its second point on appeal, K&M Translogic argues that the trial court erred in finding there was no contract to arbitrate disputes involving the 1998 Peterbilt and the 2004 Peterbilt (in other words, that those disputes were not within the scope of the arbitration clause in the Contract) because contracts can be modified, and there was objective evidence of an intent to modify the Contract to include the 1998 Peterbilt and the 2004 Peterbilt.

The arbitration clause in the Contract was expressly limited in its scope to "all claims, disputes and controversies between [the parties] *arising from or relating to any matters arising under this [Contract]*." (Emphasis added.) Thus, the terms of the Contract control and define the scope of arbitrability. *See Equal Emp. Opportunity*

---

[7]As such, we reject K&M Translogic's invitation to conclude that the trial court erred in denying the Motion to Compel Arbitration because it should have instead compelled arbitration to allow an arbitrator to determine "whether the failure of an administrative task such as filling out two additional equipment receipts rendered the [Contract] inapplicable." [Appellants' Brief, pp. 27-28] To the extent that the Appellants' Brief can be read to assert that the arbitration clause delegated the determination of the scope of the arbitration clause (*i.e.*, arbitrability) to the arbitrator, we reject the argument. Not only was the argument not raised in K&M Translogic's Motion to Compel Arbitration, the argument is in fact in diametric opposition to K&M Translogic's request that the trial court determine whether the arbitration clause covered the disputes raised in the Amended Petition. Moreover, while the FAA allows parties to delegate "gateway" issues, like the arbitrability of a particular dispute, to an arbitrator, "there is a presumption against arbitrability 'when considering whether a court or an arbitrator should decide threshold questions of arbitrability.'" *Car Credit, Inc.*, 643 S.W.3d at 371 (quoting *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018)). The parties must clearly manifest their unmistakable intent to arbitrate questions of arbitrability. *Id.* There is no language in the arbitration clause or in the broader Contract indicating such an intention to delegate the threshold issue of arbitrability.

16

*Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes to arbitration. For nothing in the [FAA] authorizes a court to compel arbitration of any issues . . . that are not already covered in the agreement.") (citation omitted). K&M Translogic's second point on appeal necessarily concedes that unless the Contract was modified to include the 1998 Peterbilt and the 2004 Peterbilt, K&M Translogic cannot prevail on a claim that disputes involving those vehicles were subject to arbitration.

The Contract identified one piece of equipment subject to its provisions: the 2009 Freightliner, identified by the Contract as number 130 in the equipment receipt attached to the Contract as exhibit A. The Contract expressly contemplated other equipment might be leased by K&M Translogic from Nelson Trucking, allowing vehicles to "be substituted, additional vehicles [to be provided], and/or vehicles to be withdrawn" by amending or supplementing the equipment receipt(s) attached to the Contract as exhibit A. The Contract states that it "constitutes the full and complete understanding existing by and between the Parties concerning the subject matter hereof and may not be modified or amended except by a written instrument signed by the [p]arties." It is uncontested that the Contract was never amended by a written instrument signed by the parties. Because no equipment receipts were ever prepared and attached to the Contract as a part of exhibit A for the 1998 Peterbilt and 2004 Peterbilt, those vehicles are not covered by the terms of the written Contract, and disputes involving those vehicles are not "matters arising under" the Contract that are subject to the Contract's arbitration clause.

17

K&M Translogic argues that even though the Contract was never amended in writing, this was an oversight, and that the evidence supports a conclusion that the parties modified the Contract through their course of conduct. But, the trial court was not obligated to credit the self-serving testimony of K&M Translogic's co-owner on this subject. Moreover, under the FAA, an arbitration agreement must be in writing. *Trunnel v. Mo. Higher Educ. Loan Auth.*, 635 S.W.3d 193 (Mo. App. W.D. 2021) (citing 9 U.S.C. section 3); see also 9 U.S.C. section 2 (describing the scope of the FAA to include "written provision[s]" in contracts to settle controversies by arbitration). That is because an agreement to arbitrate, like any other contractual agreement, "is strictly a matter of consent." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024) (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019)). "Arbitration is 'a way to resolve . . . only those disputes[] that the parties have agreed to submit to arbitration.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "This means that parties cannot be coerced into arbitrating a claim, issue, or dispute 'absent an affirmative contractual basis for concluding that the party *agreed* to do so.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 660 (2022) (quoting *Lamps Plus, Inc.*, 587 U.S. at 185). Here, an express provision in the Contract required any amendment to be in writing. And an express provision in the Contract required exhibit A to be modified with additional equipment receipts if the parties intended the Contract to cover more equipment than was originally identified. We cannot say that the trial court erred in concluding that the arbitration clause did not include within its scope disputes involving the 1998 Peterbilt or the 2004 Peterbilt.

18

K&M Translogic's second point on appeal is denied.

In its third point on appeal, K&M Translogic argues that if we conclude that the MUAA controls our construction of the arbitration clause in lieu of the FAA, then the trial court erred in denying the Motion to Compel Arbitration because the Contract was validly modified, and the arbitration agreement is enforceable. Because we have already concluded that the FAA governs this dispute, K&M Translogic's third point on appeal is denied as moot.

### Conclusion

KM Diesel & Truck Services's appeal is dismissed for lack of standing. The Order denying K&M Translogic's request to compel arbitration is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

19